IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIJI NAIDU | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS | : | |
| USA, INC. | : | NO. 16-4747 |

OPINION

JACOB P. HART  DATE: 6/15/17
UNITED STATES MAGISTRATE JUDGE

In this action, plaintiff Viji Naidu has sued her former employer, Teva Pharmaceuticals USA, Inc. ("Teva"), alleging discrimination on the basis of sex and national origin under the Civil Rights Act of 1964 (Title VII), and the Pennsylvania Human Relations Act. She alleges that she was subjected to a hostile work environment and retaliation, and that she was wrongfully terminated.

Teva has now filed a motion for summary judgment seeking dismissal of all claims. For the reasons set forth below, its motion will be denied.

I.  Standard for Summary Judgment

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. Anderson v. Liberty Lobby, supra at 255; Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, at 323.

II. Factual Background

The parties agree that Viji Naidu is a woman who was born in India and moved to the United States in 1998. Naidu Deposition, attached to Teva's Motion for Summary Judgment ("Motion") as Exhibit A at 8-10. She is married and has three children. Id. at 12-15.

In December, 2006, Teva hired Naidu to work as a database administrator. Id. at 16-17. Naidu was subsequently promoted to senior database administrator, and then senior manager. Id. at 25-6. In August, 2013, she was promoted to Associate Director of Database and Applications. Id. at 26. At around that time, Kumar Venugopal became interim Associate Director of U.S. Infrastructure, taking over a position vacated by Naidu's former supervisor, Eric Shapiro. Id. at 30-32. That appointment was later made permanent. Venugopal Deposition, attached to Motion as Exhibit B at 26.

At the relevant time, the individuals directly reporting to Venugopal were all men, except for Naidu. Teva's Exhibit B at 12-13. They included Steven Gingolaski, Alan Wodarski and Jason Dow. Id.

It is also undisputed that, at Naidu's 2013 work evaluation – which took place in January, 2014 – Venugopal rated Naidu at "Meets Expectations." 2013 Performance Review, attached to Response as Exhibit K. However, at her 2014 evaluation, which took place in January, 2015, Venugopal gave Naidu only a "Mostly Meets" overall score, with a "Below Expectation" score on collaboration and influencing. 2014 Performance Review, attached to Naidu's Response ("Response") as Exhibit L. As a result, Venugopal placed Naidu on a 90-day performance improvement plan ("PIP"). Performance Improvement Plan, January 29, 2015, attached to Response as Exhibit M. Earlier evaluations conducted by Eric Shapiro had rated Naidu highly, praising her leadership skills and relations with peers and customers. Performance Reviews from 2007-2012, attached to Response as Exhibits E-J.

In response to concerns raised by Naidu, the PIP was revised on February 23, 2015. Performance Improvement Plan, February 23, 2015, attached to Response as Exhibit N. It included "action items deliverable", i.e., projects to be completed and presented to Venugopal, on March 13, 2015, and April 10, 2015. Id. Also in February, 2015, Teva's Human Resources department investigated Naidu's complaint against Venugopal for discrimination on the basis of gender and ethnicity. Jessica Graybill Deposition, attached to Response as Exhibit C at 49. Human Resources found the complaint to be unsubstantiated. Id. at 63.

On or about April 9, 2015, Venugopal notified Naidu that her employment with Teva was terminated. Plaintiff's Responses to Defendant's First Set of Interrogatories, attached as Exhibit 14 to Teva's Exhibit A, at Admission No. 9.

The interactions between Naidu and Venugopal are otherwise in dispute. According to Naidu, during the entire period that they worked together, Venugopal made comments about her status as a working mother, asking how she managed, why she had to work, and whether it was

3

because her husband did not make enough money. Exhibit A to Motion, at 64-69, 74-75. He made similar remarks about Heather Ems, another working mother in the office, who was Venugopal's superior. Id. at 74. He also made positive remarks about his own wife, who stayed at home with their small children. Id. at 68.

In her deposition, Naidu also quotes Venugopal as having made negative remarks about her nationality:

> I think gradually when it started, like, you know, criticizing about my communication skills, that I wasn't good enough to do things, that I had to improve. And, you know, with the technical background, I had to do a lot more compared to the other guys, because they were men and they were white or whatever reason.

Id. at 69.

Naidu also testified that, in 2014 meetings, Venugopal advised her to look for a job that was more technical, because "with the leadership, that I may not be able to cut it." Id. at 96. She perceived that to be a gender-based comment because he had at times said that "being an Indian or a woman, you know, you really can't excel like men." Id. at 97.

As reflected in the above quotes, Venugopal began criticizing Naidu:

> From day to day things that would happen, anything that I did or said would always be wrong or bad. It would always be something critical. And the same thing, when somebody else did it, whether Steve or Alan, it would be looked [*sic* "looked upon"] very differently. ... Steve is a very brash person. Like, he would just talk and he doesn't really watch out or care. But it was like, that's okay, you know, he'll be fine, he's a guy and, you know, these guys, they'll be okay. Or Alan was also technical and, you know, but he's a guy, he'll be fine. But with you, you have to do a lot of work.

Id. at 70.

According to Naidu, Venugopal's criticisms were "never about work; it was always about me personally". Id. at 83. She clarified: "When I say it was not about work is that, why did you talk this way or why did you walk this way, and why did you say this, or why didn't you say this." Id. at 84.

4

Naidu acknowledges that, in preparing her 2014 review, Venugopal took into account criticism of her "people skills" from Young Shon. E-mail Exchange between Venugopal and Young Shon, attached to Response as Exhibit T. She has not denied that other Teva personnel raised issues with Venugopal in 2014 regarding their interactions with her. Exhibit B to Motion, at 53.

Naidu claims, however, that Venugopal exaggerated the importance of the criticism. She points out that Steven Gingolaski's 2013 and 2014 performance reviews also included similar criticism, based on complaints from others at Teva. Gingolaski Performance Reviews, attached to Response as Exhibit Y (under seal). Nevertheless, Gingolaski was rated "meets expectations" in the area of customer orientation and received an overall score of "exceeds expectations" in 2013 and "meets expectations" in 2014. Id. In 2014, he was merely advised to "grow in the leadership competencies, especially in the area of collaboration, influencing and team leadership." Id. at Teva Bates Stamp 01164.

Much of the foregoing is disputed by Teva. In deciding a summary judgment motion, however, I must construe the evidence in favor of Naidu, and have therefore concentrated on her version of the facts.

III.  Discussion

A.  National Origin Discrimination

As Teva has pointed out, Naidu did not include a claim of discrimination on the basis of national origin in her complaint. Nor does Naidu's complaint allege facts which would support such a claim. Naidu has not moved at any time to amend her complaint. Accordingly, there is no claim of national origin discrimination in this lawsuit, even though Naidu has referred to national origin discrimination in her response to Teva's motion.

5

B.  Discrimination on the Basis of Gender

As the Court of Appeals for the Third Circuit has explained:

> A Title VII plaintiff may make a claim for discrimination "under either the pretext theory set forth in McDonnell Douglas Corp. v. Green [411 U.S. 792 (1973)], or the mixed-motive theory set forth in Price Waterhouse v. Hopkins [490 U.S. 228 (1989)], under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons. Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008). As we recognized in Watson[ v. SEPTA, 207 F.3d 207 (3d Cir. 2000)] the "pretext" and "mixed-motive" labels can be misleading because, even in a case that does not qualify for a burden-shifting instruction under Price Waterhouse, the employer's challenged conduct may nevertheless result from two or more motives, and the plaintiff "need not necessarily show 'pretext' but may prevail simply by showing, through direct or circumstantial evidence, that the challenged action resulted from discrimination." 207 F.3d at 214 n. 5 (3d Cir. 2000) (citations omitted). Under either theory of discrimination, the plaintiff must establish that her protected status was a factor in the employer's challenged action. The difference is in the degree of causation that must be shown: in a "mixed-motive" case, the plaintiff must ultimately prove that her protected status was a "motivating" factor, whereas in a non-mixed-motive or "pretext" case, the plaintiff must ultimately prove that her status was a "determinative" factor. See id. at 214-20 (summarizing the distinction in standards of causation that apply to "pretext" and "mixed-motive" cases and concluding that the 1991 amendments to Title VII did not alter that distinction).

Connelly v. Lane Construction Corp., 809 F.3d 780, 788-9 (3d Cir. 2016).

Under McDonnell Douglas, supra, the plaintiff must show a *prima facie* case. If she succeeds, the burden switches to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the defendant is able to do so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. Id.

Whether a case is a pretext case under McDonnell Douglas or a mixed-motives case under Price-Waterhouse is a question for the court once all the evidence has been received. Connelly, supra, at 788, citing Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir. 1993).

Naidu has come forward with enough evidence to survive summary judgment on this claim, and it is not necessary at this time to determine whether she will be entitled to a Price-Waterhouse instruction. However, the statements Naidu has attributed to Venugopal, if credited, could be construed as showing a discriminatory animus sufficient to warrant "a rational presumption that the person expressing bias acted on it" when he made the decision to put Naidu on a PIP or when he fired her. Fakete v. Aetna, 308 F.3d 335, 338 at n. 4 (3d Cir. 2002), citing Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3d Cir. 1995).

Even failing that, Naidu has testified that Venugopal questioned her constantly as to how her household functioned, and made numerous statements indicating that he was dubious that a household with a working mother could be well run. She testified that he criticized non-stereotypically feminine behavior in her that he tolerated in men. This, if credited, permits an inference of discrimination supporting a *prima facie* case under McDonnell Douglas.

Teva argues that Naidu cannot show a *prima facie* case under McDonnell Douglas because she cannot show that she was qualified for the position from which she was fired, lacking the "soft skills", such as collaboration and leadership. This, however, is to assume a conclusion. Naidu has argued that her "soft skills" were no worse than those of Steven Gingolaski.

Further, the Court of Appeals for the Third Circuit has said that, while objective job qualifications such as experience and education should be considered in evaluating a plaintiff's *prima facie* discrimination case, "the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to consideration of whether the employer's nondiscriminatory reason for discharge is pretext." Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995). As noted, Naidu has offered Gingolaski as a comparator.

7

C.     Hostile Work Environment

Title VII prohibits behavior based on sex which is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). To prevail on a hostile work environment claim, a plaintiff must demonstrate five elements: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of her sex; and (5) the existence of *respondeat superior* liability. Abrahamson v. William Paterson College of New Jersey, 260 F.3d 265 (3d Cir. 2001).

Teva suggests that comments about working mothers could not, by their nature, be considered severe. Indeed, this seems to be the holding in Salvatore v. KLM Royal Dutch Airlines, No. 98 CIV 2450, 1999 WL 796172 (S.D.N.Y. Sep. 30, 1999). However, the Salvatore court mistakenly cites Trezza v. Hartford, Inc., 98 CIV 2205, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998), which actually held only that the remarks plaintiff alleged were not severe enough to establish a hostile work environment "without regard to frequency or regularity." Naidu has alleged that the discriminatory remarks were made frequently. In any event, no case in this Circuit has set forth any similar principle. Clearly, discrimination against working mothers is recognized here. See McGrenehan v. St. Denis School, 979 F. Supp. 323 (E.D. Pa. 1997); Brennan v. National Telephone Directory Corp., 881 F. Supp. 986 (E.D. Pa. 1995).

Teva is correct in pointing out that isolated incidents, unless extremely serious, cannot create a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Here, Naidu has provided only her own testimony in support of her claim that Venugopal's comments were frequent and regular. Nevertheless, her deposition testimony provides more than the "mere scintilla" of evidence which would justify dismissing her hostile work environment claim.

D.  Retaliation

Naidu also alleges that she was terminated in retaliation for having made a sexual discrimination complaint to Human Relations about Venugopal, after he placed her on a PIP. This requires not just a showing of a protected activity and an adverse action, but also a causal link between the activity and the adverse action. Farrell v. Planter's Life Savers Co., 206 F.3d 271, 279 (3d Cir. 2000).

Teva claims that Naidu cannot show a causal link between her complaint and her termination, because she "had a record of performance deficiencies and was the subject of complaints made by several others." Memorandum of Law in Support of Motion at 13. As discussed, however, Naidu has come forward with Steven Gingolaski's performance reviews in support of her claim that the quality of her work did not cause her dismissal.

Further, the timing is suggestive, particularly in light of the fact that Naidu was terminated before her 90-day PIP period was complete. Timing, while not in itself sufficient to show retaliation, does provide an evidentiary basis from which an inference of retaliation can be drawn. Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Teva's assertion that Venugopal could not have retaliated against Naidu because he did not know that it was she who filed the complaint against him is not so convincing as to justify dismissal of this claim. Jennifer Graybill, who investigated the claim, testified as follows:

> Q. And did you identify who the complainant was, who made the claim when you met with these people individually?
>
> A. Yes, I believe so.

Graybill Deposition, attached to Motion as Exhibit E, at 60. This information could certainly have reached Venugopal's ears. In any event, Naidu was the only woman who reported directly to Venugopal and she had at that very time vocally complained that it was unfair for him to have put her on a PIP.

IV. Conclusion

For the foregoing reasons, I will file an order on the date set forth above, denying Teva's Motion for Summary Judgment.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE